*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0429P (6th Cir.)
File Name: 03a0429p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

VICKI STEINER,
　　　　*Plaintiff-Appellant,*

　　　*v.*　　　　　　　　　No. 02-3395

WILLIAM J. HENDERSON,
Postmaster General, United
States Postal Service,
　　　　*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 01-01064—Dan A. Polster, District Judge.

Argued: September 16, 2003

Decided and Filed: December 8, 2003

Before: SUHRHEINRICH, COLE, and ROGERS, Circuit
Judges.

_____

## COUNSEL

**ARGUED:** Elizabeth A. Raies, TZANGAS, PLAKAS,
MANNOS & RECUPERO, Canton, Ohio, for Appellant.
William J. Kopp, ASSISTANT UNITED STATES

ATTORNEY, Cleveland, Ohio, for Appellee. **ON BRIEF:**
Elizabeth A. Raies, TZANGAS, PLAKAS, MANNOS &
RECUPERO, Canton, Ohio, for Appellant. William J. Kopp,
ASSISTANT UNITED STATES ATTORNEY, Cleveland,
Ohio, for Appellee.

_____

## OPINION

_____

SUHRHEINRICH, Circuit Judge. Plaintiff-Appellant
Vicki Steiner appeals from the district court's dismissal of her
Title VII claim for failure to exhaust her administrative
remedies. The district court dismissed Steiner's claim under
Fed. R. Civ. P. 12(b)(6) because Steiner had failed to file her
gender discrimination claim with an Equal Employment
Opportunity Commission ("EEOC") officer within forty-five
days of the alleged discriminatory occurrence, as required by
29 C.F.R. § 1614.105(a)(1). Steiner contends that principles
of equitable tolling apply, despite her failure to timely contact
an EEO counselor, because she actively and diligently
pursued a resolution to her complaint by following an
established employer policy concerning discrimination
complaints in the workplace. We affirm the decision of the
district court.

### I.

Steiner is an employee of the United States Postal Service
("USPS"). For the past twenty-four years, she has worked at
the USPS mail processing plant in Canton, Ohio. In 1997,
she received a promotion to the position of Manager of
Distribution Operations ("MDO") for the weekday day shift.
As a MDO, Steiner's new responsibilities included managing
employees who process mail in the plant.

In April 1998, Judson Zernechel arrived at the Canton plant
as the new plant manager, and Steiner's supervisor. On

October 4, 2000, Zernechel distributed a letter informing Steiner that she was to be reassigned, effective October 7, to the position of MDO "in training," and that she would no longer be working the day shift Monday through Friday, but the midnight shift Thursday through Monday.

Steiner was displeased with her reassignment and apparently perceived the reassignment as discrimination based on her gender. Accordingly, she sought redress. On October 18, she sent a letter to Frank Neri, the Senior Plant Manager and Zernechel's direct superior, requesting a meeting to discuss her reassignment. The letter stated that Steiner felt she was "being treated disparately."

Neri responded on October 20, and informed Steiner that she should contact Zernechel directly to discuss her concerns. Steiner did not contact Zernechel as Neri had instructed, but instead contacted Jordan Small, the District Manager and Neri's direct superior, by letter on November 8, and requested a meeting to discuss the situation. Small responded in writing on November 15 and informed Steiner that he had no jurisdiction to handle her complaint and stated that he was referring her letter back to Neri, the Senior Plant Manager.

Neri responded to the forwarded letter on December 4, and again informed Steiner that she should attempt to meet with Zernechel, her direct supervisor, to discuss the matter. Specifically, Neri stated that he wished to "encourage [Steiner] again to meet with Judson Zernechel so decisions can be made that best suit [Steiner] and [her] future success with the [USPS]." Moreover, in this December 4 letter, Neri stated that he was willing to be present at any meeting between Zernechel and Steiner.

Steiner again failed to attempt to meet with Zernechel, and contacted the EEOC for pre-complaint counseling on January 9, 2001. She subsequently filed a Title VII complaint with the USPS EEOC on February 7, 2001. The USPS EEOC dismissed her complaint as untimely on March 15, 2001. She

filed suit in the district court on May 3, 2001. The USPS filed a motion to dismiss Steiner's complaint as untimely, and the district court granted that motion on March 28, 2002, because Steiner had not filed her complaint with the EEOC within the forty-five day deadline provided by 29 C.F.R. § 1614.105(a)(1). Moreover, the district court found that there was no reason to equitably toll the filing deadline under the circumstances. Steiner filed a notice of appeal to this Court on April 10, 2002, and her appeal of the district court's dismissal is timely before us.

## II.

We review de novo a district court's dismissal of a complaint pursuant to Fed. R. Civ. P. 12(b)(6). *Amini v. Oberlin Coll.*, 259 F.3d 493, 497 (6th Cir. 2001). We will dismiss the plaintiff's claims only if it is clear that the plaintiff "can prove no set of facts in support of the claims that would entitle him to relief." *Id.* (citation omitted).

"We review a district court's decision to grant or deny equitable tolling de novo when the facts are undisputed or the district court rules, as a matter of law, that equitable tolling is not available; in all other circumstances we review for an abuse of discretion." *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 469 (6th Cir. 2003).

## III.

Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended by the Equal Employment Opportunity Act of 1972, 86 Stat. 103, 42 U.S.C. §§ 2000e, *et seq.*, provides the exclusive judicial remedy for claims of discrimination in federal employment. *See Brown v. General Servs. Admin.*, 425 U.S. 820, 835 (1976). "In permitting federal employees to sue under Title VII, Congress conditioned the government's waiver of sovereign immunity upon a plaintiff's satisfaction of 'rigorous administrative exhaustion requirements and time limitations.'" *McFarland v.*

*Henderson*, 307 F.3d 402, 406 (6th Cir. 2002) (quoting *Brown*, 425 U.S. at 833). At issue here is the requirement that a federal employee claiming discrimination must contact an Equal Employment Opportunity ("EEO") counselor within forty-five days of an alleged discriminatory occurrence. 29 C.F.R. § 1614.105(a)(1) (2003). Failure to do so is cause for dismissal of the complaint by the agency, *see* 29 C.F.R. § 1614.107(a)(2) (2003), as well as by the district court. *See Brown*, 425 U.S. at 832 (noting that § 717(c) allows an aggrieved employee to file a civil action in federal district court, but that the complainant must first seek relief in the agency that had discriminated against him).

Steiner does not dispute that she failed to contact an EEO counselor within forty-five days of the October 7, 2000, reassignment. However, Steiner argues that the forty-five day period is subject to principles of equitable tolling. Indeed, the forty-five day filing period is not a jurisdictional prerequisite, and can be tolled where principles of equity demand it. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *see also Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990) (extending *Zipes* to administrative requirements for federal employees); *Mitchell v. Chapman*, 343 F.3d 811, 819-20 (6th Cir. 2003); *Seay*, 339 F.3d at 469. This Court has held that a federal employee's obligation to consult with an EEO counselor within a set time period as a precondition to suit is subject to equitable tolling, waiver, and estoppel. *Mitchell*, 343 F.3d at 819-20.

At the same time, the Supreme Court has made clear that tolling in a Title VII context should be allowed "only sparingly." *Irwin*, 498 U.S. at 457. This Court has similarly noted that equitable tolling is "available only in compelling cases which justify a departure from established procedures." *Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1488 (6th Cir. 1989).

In considering whether equitable tolling should apply, we generally look at five factors: (1) whether the plaintiff had

actual notice of the time restraint; (2) whether she had constructive notice of the time restraint; (3) the degree of diligence exerted in pursuing her rights; (4) the degree of prejudice to the defendant; and (5) the reasonableness of plaintiff's ignorance of the time constraint. *EEOC v. Ky. State Police Dep't*, 80 F.3d 1086, 1094 (6th Cir. 1996); *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988). These factors are not exclusive bases for equitable tolling, however, and the decision to allow equitable tolling is made on a case-by-case basis. *Seay*, 339 F.3d at 469 (citations omitted).

Steiner attached a copy of the USPS's "Publication 552," entitled "Manager's Guide to Understanding Sexual Harassment," to her memorandum in opposition to the USPS's motion to dismiss below.[1] On page ten of that publication, the forty-five day filing requirement is clearly delineated. Steiner has admitted that, as a manager herself, she was intimately familiar with these guidelines, and further states that she relied on this publication to determine how to proceed with her complaint. By her own admission, Steiner had actual knowledge of the time limits. *Cf. Amini*, 259 F.3d at 501 (noting that the plaintiff, a lawyer, admitted in his brief that he was aware of both the EEOC filing requirements and the applicable limitations period; agreeing with the district court that equitable tolling was not warranted). Moreover, Steiner's correspondence with her superiors indicates that Steiner had hired an attorney as early as October 18, 2000. "Constructive knowledge of a time limit will usually be imputed when the plaintiff retains an attorney within the limitations period." *Weigel v. Baptist Hosp.*, 302 F.3d 367, 376 (6th Cir. 2002); *Jackson v. Richards Med. Co.*, 961 F.2d 575, 579 (6th Cir. 1992). Accordingly, we find little doubt that Steiner had actual, let alone constructive, notice of the

---

[1] This publication deals only with sexual harassment claims, and not discrimination claims. Steiner, however, uses this publication to demonstrate that she was aware of the internal operating procedures of the USPS.

forty-five day filing deadline. She was aware of the filing deadline and failed to follow the Senior Plant Manager's instructions on how to pursue her claim internally. Therefore, the first, second, and fifth factors cut against Steiner's argument for equitable tolling.

Nevertheless, Steiner claims that the forty-five day filing period should be tolled because she diligently pursued her claim during that time period. Steiner presents her correspondence with both Neri and Small to illustrate that she was in pursuit of her claim at all times. However, although Steiner claims the pursuit of her claim was diligent, she has admitted that at no time did she follow Neri's instructions as to how to proceed with her claim. Neri twice instructed Steiner to contact Zernechel for another meeting, and even offered to appear at such a meeting. Steiner never contacted Zernechel. Thus, the third factor also cuts against Steiner.

Steiner further claims that Neri's and Small's refusal to agree to meet with her or to personally address her claim contributed to her missing the deadline, and constituted misleading tactics that should likewise toll the deadline period. This Court has held that affirmative representations by the employer that misled a Title VII complainant into missing a filing deadline are sufficient to toll the applicable Title VII period. *See, e.g.*, *Leake v. Univ. of Cincinnati*, 605 F.2d 255, 259 (6th Cir. 1979); *see also Irwin*, 498 U.S. at 458 (noting that the Court has allowed equitable tolling in situations where the claimant "has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass"). In *Leake*, we found it necessary to equitably toll the filing deadline because the defendant employer had specifically requested that the plaintiff not seek EEOC counseling until it had time to investigate the plaintiff's allegations. There we found:

It was during the period of voluntary negotiations that plaintiff and the University agreed that she would give the University sufficient time to investigate her

complaints, and the University agreed that it would not use the time it spent in its investigation to prejudice plaintiff with respect to any statute of limitations. It appears to us that the University's express statements, and plaintiff's reliance thereon, could reasonably have led plaintiff to delay in the filing of her charges with the EEOC.

605 F.2d at 259. Here, Neri, through his letters, merely encouraged Steiner to first seek redress from Zernechel. Nowhere in either of Neri's letters to Steiner did Neri mention the filing deadline. Nor did Neri ever discourage Steiner from immediately filing her claim with the EEOC. Therefore, we cannot find that Neri, or any other USPS supervisor, tricked Steiner or did anything untoward in order to prevent her from seeking EEOC counseling. Steiner was free to seek EEOC counseling at any time. *Cf. Seay*, 338 F.3d at 468-70 (holding that equitable tolling was warranted where the employer informed the plaintiff that no one had received the job, but omitted additional information that another employee had been "rotated" into the position for "developmental purposes"; stating that "[t]his was the critical information Plaintiff needed to raise his suspicions about the employer's possible racially discriminatory motive in rejecting him").

Furthermore, Steiner has not presented any evidence that either Neri or Small blatantly disregarded USPS policy in an effort to improperly delay satisfaction of Steiner's claim. Steiner impliedly argues that either Neri, Small, or both, were required to address her claim. In her affidavit, Steiner relies on the aforementioned Publication 552 as the basis for this assertion. However, Publication 552 does not make any specific individual responsible for such discrimination complaints, but matter of factly states that each manager, postmaster, and supervisor has the "role [and responsibility] to listen, inquire, and try to resolve a sexual harassment complaint," and that if the supervisor does not "have the authority to conduct an inquiry, [he] must take it to a manager, postmaster, or supervisor who does." First, this is

exactly what Small and Neri did in referring her to Zernechel. This vague language does not necessarily render every USPS manager or supervisor responsible for addressing any employee's claim. Second, even if Publication 552 does make every supervisor responsible, it applies only to *harassment* claims, not discrimination claims. The fact that both harassment and discrimination claims potentially fall under Title VII and are both subject to the forty-five day filing deadline does not necessarily mean that each claim is likewise governed by the same internal grievance procedures. In any event, we find no evidence that either Neri or Small did anything at all to mislead Steiner or to prevent her from timely filing her claim with the EEOC.

Finally, assuming lack of prejudice to the defendant employer had been shown, Steiner would still not be entitled to equitable relief. The Supreme Court has held that the absence of prejudice to the defendant employer "is not an independent basis for invoking the doctrine and sanctioning deviations from established procedures." *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984) (per curiam); *Amini*, 259 F.3d at 501.

In essence, Steiner seeks equitable tolling because she was proactive in seeking conciliation, and did not passively let the time slip away. Her efforts are at odds with the will of Congress, however. "In Title VII, Congress set up an elaborate administrative procedure, implemented through the EEOC, that is designed to assist in the investigation of claims of racial discrimination in the workplace and to work towards the resolution of these claims through conciliation rather than litigation." *Patterson v. McLean Credit Union*, 491 U.S. 164, 180-81 (1989) (citing 42 U.S.C. § 2000e-5(b)); *see also Morgan v. Washington Mfg. Co.*, 660 F.2d 710, 711 (6th Cir. 1981) (stating that the purpose of Title VII's administrative scheme is "to encourage reconciliation and arbitration of employee grievances prior to litigation"). It is only after these procedures have been exhausted and the plaintiff has received

a "right-to-sue" letter, that she may pursue a claim in federal court. *Patterson,* 491 U.S. at 181.

"Voluntary compliance is Title VII's preferred method for promoting the goal of nondiscrimination; it also is the reason for the EEOC's existence." *St. John v. Employment Dev. Dep't.*, 642 F.2d 273, 275 (9th Cir. 1981). *See generally Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44 (1974) (stating that "[c]ooperation and voluntary compliance were selected" by Congress as the preferred means of assuring equality of employment opportunities by eliminating discrimination, and "[t]o this end, Congress created the [EEOC]" and established a procedure by which the EEOC and cooperating local agencies would have an opportunity to settle disputes through conference and conciliation before the aggrieved party was allowed to file a lawsuit). Steiner's efforts contravene the congressional decision that the role of conciliator belongs to a third party with expertise, the EEOC. As such, her efforts do not provide a suitable basis upon which to grant equitable relief. *Cf. Puckett*, 889 F.2d at 1488 (holding that equitable tolling was not warranted where the plaintiff merely requested withdrawal of her EEOC charges but did not request a right-to-sue letter; stating that "[s]uch a decision flouts the statutory requirement of a receipt of a right-to-sue letter, and amounts to a position of arrogance regarding the statutory requirement as mere surplusage").

As we remarked in *Graham-Humphreys v. Memphis Brooks Museum of Art*, 209 F.3d 552 (6th Cir. 2000), "[t]ypically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Id.* at 560-61 (and cases therein); *see also Brown v. Crowe*, 963 F.2d 895, 899-900 (6th Cir. 1992) (holding that equitable tolling applied where the legal mistake which caused the plaintiff not to meet the statutory time requirements was made by a state agency and through no fault of plaintiff). The circumstances of this case certainly do not fit within that model. As the Supreme Court observed in *Baldwin,*

[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants. As we stated in *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 . . . (1980), "[i]n the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law."

*Brown*, 466 U.S. at 152. Accordingly, we hold that the district court did not err in dismissing this action for failure to meet the forty-five day filing period. In other words, the district court did not err in holding as a matter of law that equitable tolling was not warranted on the facts of this case.

### III.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.